**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Kelly L. Stephens | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: January 28, 2025

Ms. Carla D. Aikens
Law Office
615 Griswold Street
Suite 709
Detroit, MI 48226-3900

Mr. James W. Rose
Taft Stettinius & Hollister
27777 Franklin Road
Suite 2500
Southfield, MI 48034-8214

        Re: Case No. 24-1557, *John Gavette v. United Wholesale Mortgage, LLC*
            Originating Case No. : 2:23-cv-11856

Dear Counsel,

    The Court issued the enclosed opinion today in this case.

    Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                            Sincerely yours,

                                            s/Cathryn Lovely
                                            Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0047n.06

No. 24-1557

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 28, 2025
KELLY L. STEPHENS, Clerk

JOHN GAVETTE,

    Plaintiff-Appellant,

v.

UNITED WHOLESALE MORTGAGE, LLC,

    Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: WHITE, READLER, and MATHIS, Circuit Judges.

READLER, Circuit Judge. Over two years into his tenure as an underwriter for United Wholesale Mortgage, LLC, John Gavette was fired by the company. Gavette believed his termination resulted from his accommodation request to care for his disabled wife. So he sued the company for, in his view, violating federal and state disabilities laws. In response, United Wholesale, citing an arbitration provision in Gavette's employment contract (the "Agreement"), moved to dismiss the complaint and compel arbitration. The district court granted the company's motion. We now affirm.

I.

Like many "[e]mployment contracts," the Agreement at issue is "covered by the" Federal Arbitration Act (FAA). *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)). In a nutshell, the FAA validates and encourages the non-judicial resolution of most contract disputes. *See* 9 U.S.C. § 2. To that end, the FAA authorizes a party to an agreement with an arbitration clause to move to dismiss a case filed in

No. 24-1557, *Gavette v. United Wholesale Mortgage, LLC*

federal court in accordance with Federal Rule of Civil Procedure 12(b)(6), asking that the court instead compel arbitration between the parties. *See id.* § 4; *New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 462–63 (6th Cir. 2024). We in turn review de novo a decision compelling arbitration under the FAA. *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 836 (6th Cir. 2021).

## II.

Begin with the understanding that, under the FAA, a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. We approach questions of arbitrability "with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). It follows that to compel arbitration under the FAA, a court must conclude that (1) the parties agreed to arbitrate, (2) their agreement covers the claims at issue, and (3) Congress intended those claims to be arbitrable. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

While the FAA generally preempts state law governing arbitration agreements, *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984), we look to state contract law to determine whether the arbitration clause itself was validly obtained, *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996). Which state's law controls here? Gavette is a Michigan resident who worked for United Wholesale in Michigan, and the Agreement specified that it "shall be construed" according to the laws of the Wolverine State. For those reasons, we consult Michigan law in analyzing the enforceability of the purported arbitration agreement. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703–04 (Mich. 1995) (enforcing contractual choice-of-law clause so long

2

as chosen state wields a "substantial relationship to the parties or the transaction" and there is a "reasonable basis for choosing that state's law").

  A. With these guideposts in mind, consider first whether Gavette and United Wholesale agreed to arbitrate. In a clause titled "**Arbitration**," the Agreement states (in capital lettering) that the signing employee agrees to submit employment-related "claims to binding arbitration":

> BY SIGNING THIS AGREEMENT, EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS GIVING UP THE RIGHT TO A TRIAL IN A COURT OF LAW AS TO ANY DISCRIMINATION OR OTHER STATUTORY CLAIMS, AND IS HEREBY AGREEING TO SUBMIT ALL SUCH CLAIMS TO BINDING ARBITRATION.

R. 7-1, PageID#62. Next, the Agreement, utilizing bold, italicized, and underlined language, includes an express provision reflecting that the signing employee "agrees to the terms and conditions of this Agreement":

> **READ THIS AGREEMENT BEFORE SIGNING**
>
> ***As evidenced by Employee's signature below, Employee hereby acknowledges that he or she has read and understood all of the terms and conditions of this Agreement, that Employee agrees to the terms and conditions of this Agreement, and that this Agreement is binding upon Employee in accordance with its terms.***

*Id.*, PageID#63.

  Neither party disputes that the Agreement contains Gavette's electronic signature. *Id.*, PageID#64 (displaying a checked box designated as "Employee Signature" followed by Gavette's name, a timestamp, and a clarification that "[c]hecking the checkbox above is equivalent to a handwritten signature"). Read together, then, these provisions demonstrate that Gavette and his employer knowingly agreed to arbitrate any discrimination or other statutory claims asserted by Gavette. *See McKinstry v. Valley Obstetrics-Gynecology Clinic, P.C.*, 405 N.W.2d 88, 96 (Mich. 1987) ("Michigan law further presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents."); Mich. Comp. Laws § 450.837(1)

("A record or signature shall not be denied legal effect or enforceability solely because it is in electronic form.").

    B. Turn next to the scope of the Agreement's arbitration clause. Again, its last sentence states that Gavette "ACKNOWLEDGES THAT HE . . . IS GIVING UP THE RIGHT TO A TRIAL IN A COURT OF LAW AS TO ANY DISCRIMINATION OR OTHER STATUTORY CLAIMS, AND IS HEREBY AGREEING TO SUBMIT ALL SUCH CLAIMS TO BINDING ARBITRATION." R. 7-1, PageID#62. Gavette concedes that his discrimination and retaliation claims arise out of his employment with United Wholesale. And as those claims rest solely on the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101, *et seq.*, his lawsuit concerns "discrimination or other statutory claims" against the company. *See Meemic Ins. Co. v. Jones*, 984 N.W.2d 57, 63 (Mich. 2022) ("We interpret contracts by giving plain meaning to the words and phrases used by the parties."). Accordingly, this element too supports arbitration.

    C. So does congressional intent. The FAA, of course, enacts a national policy favoring arbitration. *See* 9 U.S.C. § 2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Nothing suggests that Congress sought to foreclose arbitration for claims arising under the state and federal statutes at issue here. Quite the opposite, in fact. The ADA itself recognizes that "the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under th[e ADA]." 42 U.S.C. § 12212. We likewise "see nothing in the [FAA] indicating that the broad principle of enforceability [of arbitration] is subject to any additional limitations under state law." *Southland*, 465 U.S. at 11. By and large, those antidiscrimination statutes operate in tandem with the FAA. "[A]rbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific

4

protection against discrimination prohibited by federal law . . . ." *Cir. City Stores*, 532 U.S. at 123; *see also Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F. App'x 482, 483, 487 n.1 (6th Cir. 2008) (recognizing arbitrability of claims under both the ADA and Michigan's Persons with Disabilities Civil Rights Act). Thus, United Wholesale satisfies the third (and final) element needed to compel arbitration.

     D. Ordinarily, when a court deems arbitration appropriate, it must then determine whether to stay or dismiss the proceedings, either in whole or part. *Stout*, 228 F.3d at 714; *see also Smith v. Spizzirri*, 601 U.S. 472, 477–78. (2024). That is unnecessary here, however, as United Wholesale seeks arbitration of Gavette's entire lawsuit, and no party has requested a stay. *See Fleming v. Kellogg Co.*, No. 23-1966, 2024 WL 4534677, at *2 n.2 (6th Cir. Oct. 21, 2024); *Nat'l Cas. Co. v. Cont'l Ins. Co.*, 121 F.4th 1151, 1153 (7th Cir. 2024).

III.

     Gavette's primary retort is the following: he does not remember signing an arbitration clause. At most, he recalls documents being "laid out in front of [him] without adequate time to review [them] or seek legal advice." R. 16, PageID#160. According to Gavette, United Wholesale neither explained the Agreement's contents nor recommended that Gavette consult an attorney. Had he known of the arbitration clause, Gavette says, he would have researched the clause and its application to his job. And, Gavette adds, because United Wholesale offered no countervailing evidence about how it presented the arbitration clause to him, there was no mutuality of agreement needed to enforce the provision. *See McMillon v. City of Kalamazoo*, 983 N.W.2d 79, 81 (Mich. 2023) ("Mutuality of agreement requires a valid offer and an acceptance."); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so . . . .").

5

Case 2:23-cv-11586-SJM-DRG ECF No. 272, PageID.18228 Filed 01/28/25 Page 7 of 10  Case: 24-1557    Document: 27-2    Filed: 01/28/2025    Page: 7    (7 of 10)

No. 24-1557, *Gavette v. United Wholesale Mortgage, LLC*

We disagree. Gavette has not alleged that United Wholesale misstated the Agreement's terms or otherwise induced his consent via misrepresentations, foreclosing either theory of fraud under Michigan law. *See Meemic Ins. Co. v. Fortson*, 954 N.W.2d 115, 125 n.13 (Mich. 2020). Nor has he alleged any unlawfulness in the company's onboarding process, foreclosing a duress claim. *See Beachlawn Bldg. Corp. v. City of St. Clair Shores*, 121 N.W.2d 427, 429–30 (Mich. 1963) ("Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will." (quoting *Hackley v. Headley*, 8 N.W. 511, 512–13 (Mich. 1881))). True, Gavette alleges that United Wholesale asked him to return all onboarding documents "as soon as possible" so that he could start orientation. But even accepting Gavette's assertion as true, this expression at most merely conveys a sentiment of urgency for commencing Gavette's employment—not that he risked losing his job if he did not immediately sign the documents, unaware of their contents. Nor does Gavette state that the company affirmatively rushed him to sign the Agreement by, say, refusing a request for additional time.

In the end, whether Gavette read the Agreement, understood the meaning of its arbitration clause, or received legal assistance from his employer is irrelevant. In Michigan, "one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. 1999) (quoting *Komraus Plumbing & Heating, Inc. v. Cadillac Sands Motel, Inc.*, 195 N.W.2d 865, 868 (Mich. 1972)). To the same end, Gavette's failure to understand the contract's terms constitutes "negligence which estops him from voiding the instrument on the ground that he was ignorant of its contents, in the absence of circumstances fairly excusing his failure to inform himself." *Scholz v. Montgomery Ward & Co.*, 468 N.W.2d 845, 848–49 (Mich.

6

1991) (quoting *Sponseller v. Kimball*, 224 N.W. 359, 360 (Mich. 1929)). As just explained, Gavette lacks such a "fair[] excus[e]." *Id.* at 849.

Gavette faults United Wholesale for failing to engage with his purported ignorance as to the Agreement's contents. But, again, as a legal matter, Michigan law presumes that parties have read what they have signed, *Farm Bureau Mut. Ins.*, 596 N.W.2d at 920, and nothing indicates that parties need to affirmatively supplement signed contracts with evidence of their presentation before seeking enforcement, *see, e.g.*, *Donaldson v. Hull*, 242 N.W. 732, 732 (Mich. 1932) ("Having deliberately put the agreement in writing and signed and executed the same, such written agreement, in the absence of fraud, accident, or mistake, is so conclusively presumed to embody the real contract . . . ."). At any rate, United Wholesale did supply sworn testimony from a human-resources director explaining how and why Gavette's signature appeared on the Agreement, all of which reflects Gavette's assent to the Agreement. According to that employee, Gavette created a username and password on United Wholesale's onboarding system, logged into that system using those credentials, and electronically signed the Agreement. And, the record reveals, he seems to have done it on his own time: at 8:19 p.m. on April 11, 2019. Michigan law did not require any of that evidence in the first place, and it certainly does not require anything more.

Gavette's remaining arguments need limited response. For instance, Michigan does not require the Agreement to include page numbers, as Gavette appears to believe. After all, Michigan courts enforce similar at-will employment arrangements even in the absence of a written contract altogether. *See, e.g.*, *Dunn v. Goebel Brewing Co.*, 99 N.W.2d 380, 383 (Mich. 1959).

Nor can we agree with his understanding of Rule 12(b)(6). To his mind, if the district court had not dismissed his lawsuit in favor of arbitration at such a nascent stage, he could have procured evidence at discovery demonstrating his nonconsent to arbitration. We need not consider this

7

No. 24-1557, *Gavette v. United Wholesale Mortgage, LLC*

argument because Gavette failed to make the point in his opening brief. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will treat an argument as forfeited when it was not raised in the opening brief." (quotations omitted)); *Amezola-Garcia v. Lynch*, 846 F.3d 135, 139 n.1 (6th Cir. 2016) ("[A]rguments not raised in a party's opening brief are deemed waived . . . .").

\*   \*   \*   \*   \*

Accordingly, we affirm the district court's order.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-1557

JOHN GAVETTE,

    Plaintiff - Appellant,

    v.

UNITED WHOLESALE MORTGAGE, LLC,

    Defendant - Appellee.

**FILED**
Jan 28, 2025
KELLY L. STEPHENS, Clerk

Before: WHITE, READLER, and MATHIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk